IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDALL PARSONS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 17-2888 |
| | : | |
| CITY OF PHILDELPHIA, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                                   September 28, 2018

      Pro se Plaintiff Randall Parsons, an inmate in federal custody, brings this action against the City of Philadelphia, two unnamed employees of the Philadelphia Sherriff's Department, and Louis Giorla, the former Commissioner of the Philadelphia Prison System, alleging violations of his rights under the United States and Pennsylvania Constitutions.[1] Parsons's claims stem from his transfer from federal custody to a Philadelphia County prison to stand trial on misdemeanor charges in Philadelphia Municipal Court. Parsons alleges the transfer was unlawful because the writ use to effectuate it was defective and the failure to follow the proper procedures resulted in his being held in a Philadelphia prison, where he was subjected to unconstitutional conditions of confinement, for six months. Parsons further alleges the transfer was the product of a conspiracy among the Defendants, who knowingly and intentionally presented a bogus writ to federal prison staff to impede him from litigating his direct appeal by separating him from his legal materials. The City of Philadelphia and Giorla have filed a motion to dismiss. For the reasons set forth below, the motion will be granted in part and denied in part.

---

[1] Parsons also asserted claims against former Philadelphia District Attorney Seth Williams, Assistant District Attorney Christina Giardina, and the Philadelphia Sheriff's Office, but his claims against these Defendants were dismissed by Order of October 11, 2017.

## FACTS[2]

In December 2012, Parsons was charged in Philadelphia Municipal Court with the misdemeanor offenses of possession of a small amount of marijuana for personal use and driving under the influence (first offense). Compl. Ex. A, at 3-4. The following month, he was released on bail. *Id.* at 5. In March 2013, Parsons was indicted on federal charges and held in federal custody pending trial. *See* Docket Entry 1, *United States v. Parsons*, No. 13-104 (E.D. Pa. Mar 7, 2013). Parsons's bail in the Municipal Court case was subsequently revoked in April 2013. Compl. Ex. A, at 5. In January 2014, Parsons pleaded guilty to one count of Hobbs Act robbery, and in April 2015, he was sentenced to 90 months in federal prison. *See* Docket Entries 105, 205, *United States v. Parsons*, No. 13-104 (E.D. Pa.).

In June 2015, Parsons was transferred from the federal prison where he was serving his federal sentence (FCI-Allenwood) to the Curran-Fromhold Correctional Facility (CFCF), a Philadelphia County prison, for a July 1, 2015, trial date in his 2012 Municipal Court case. Compl. ¶¶ 14, 16 & Ex. B. Parsons alleges the writ of habeas corpus ad prosequendum used to effectuate the transfer was "bogus," as it was not dated, did not include the name or legible signature of the authorizing official, and was never filed with the Philadelphia Court of Common

---

[2] The following facts are drawn from Parsons's Complaint and the exhibits attached thereto, including the docket in Parsons's 2012 criminal case in Philadelphia Municipal Court, all of which this Court may properly consider in evaluating the instant motions to dismiss. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (holding documents a court may consider in deciding a Rule 12(b)(6) motion to dismiss include "the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents"). Because Parsons' claims also implicate the procedural history of his underlying federal criminal case, the Court has also consulted the docket in that case to a limited extent. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (holding matters of public record a court may consider on a motion to dismiss "include criminal case dispositions such as convictions or mistrials").

Pleas.[3] *Id.* ¶¶ 20-22; *see also id.* Exs. B, D.  Based on a comparison of the illegible signature on the writ to a list of Philadelphia Common Pleas Court judges from 2015, Parsons believes the writ was never signed by a judicial officer, as required by Rule 900 of the Philadelphia Court of Common Pleas' Local Criminal Rules.  *See id.* ¶ 26 & Exs. B, C.

Although Parsons arrived at CFCF in advance of the scheduled July 1, 2015, trial date, he was not taken to court that day, and because the writ was never filed with the court, the court believed Parsons was still in federal custody.  *See id.* ¶ 2 & Ex. A, at 10.  Moreover, although the writ directed that, at the conclusion of Parsons's court appearance, he was to be returned to FCI-Allenwood, *id.* Ex. B, he remained at CFCF on the bogus writ for approximately six months while his trial date was repeatedly postponed and contradictory information about where he was being housed was entered on the state court docket,[4] *id.* Ex. A, at 10-13.  In December 2015, the state-law charges against Parsons were dismissed on speedy trial grounds under Pennsylvania Rule of Criminal Procedure 1013, and Parsons was returned to federal custody.  *Id.* ¶ 18 & Ex. A, at 13.

While at CFCF, Parsons was housed as one of three inmates in a cell intended for two people and required to sleep in a "crate" on the ground, eight inches from the toilet, where he was constantly splashed with urine and "other toxic waste."  *Id.* ¶¶ 31, 37.  Additionally, Parsons was never provided hygiene supplies, and could not purchase supplies from the commissary for more than two weeks.  *Id.* ¶ 32.  Due to the conditions of his confinement at CFCF, Parsons

---

[3] After he was returned to federal custody in December 2015, Parsons obtained a copy of the writ from the Office of Judicial Records at FCI-Allenwood. Compl. ¶ 21.

[4] Although Parsons was at all times held at CFCF from June 29, 2015, until December 23, 2015, the docket in the Municipal Court action inaccurately states he was in federal custody on July 1, 2015, August 3, 2015, and September 17, 2015.  *See* Compl. Ex. A, at 10, 12.  Curiously, the docket also lists Parsons as being "present on bail" on October 15, 2015.  *Id.* at 12.

3

contracted Methicillin-resistant Staphylococcus aureus (MRSA) on the top of his head which caused irritation, swelling, itching, soreness, bleeding, and hair loss at the infection site. *Id.* ¶ 43.

Between June 2015 and December 2015, Parsons submitted several administrative grievances to Giorla, objecting to being held in local custody and to the conditions of his confinement, and requesting to be returned to federal custody pursuant to Local Criminal Rule 900, which provides that state or federal prisoners transferred to the Philadelphia County prison system for purposes of a trial or hearing are to be transferred upon conclusion of the proceeding or when the proceeding has been rescheduled for a period in excess of 30 days.[5] *See* Compl. ¶ 37. No action was taken on Parsons's grievances.

Parsons alleges his unauthorized transfer from federal to local custody on a bogus writ, and the conditions of his confinement at CFCF violated his rights under the United States and Pennsylvania Constitutions. He also alleges his transfer was the product of a conspiracy aimed at impeding him from litigating his direct appeal in his federal criminal case.[6] The City and Giorla move to dismiss all claims against them on the grounds that Parsons (1) failed to allege facts regarding a municipal policy or custom as required to state a § 1983 claim against the City; (2) failed to allege Giorla had any personal involvement in the alleged constitutional violations,

---

[5] Parsons also alleges his grievances to Giorla requested his release from CFCF on the ground that he had been granted bail in the Municipal Court case. Compl. ¶ 37. According to the docket in that case, however, Parsons's bail was revoked in April 2013, after he was taken into federal custody. Compl. Ex. A, at 5.

[6] Parsons alleges he was not permitted to secure his legal materials prior to being transferred and was unable to retrieve his legal materials upon his return to federal custody. *See* Compl. ¶¶ 17, 41-42. He claims that the lost legal materials include a sworn affidavit from an alibi witness who died while Parsons was in CFCF. *Id.* ¶ 19.

as required to state a § 1983 claim against Giorla; and (3) cannot bring a claim for money damages against either Defendant under the Pennsylvania Constitution.[7]

**DISCUSSION**

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual matter elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Where, as here, the plaintiff is proceeding pro se, the court must construe the complaint liberally, accept as true all well-pleaded factual allegations therein, and draw all reasonable inferences in the plaintiff's favor. *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 604 (3d Cir. 2015). The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Defendants move to dismiss Parsons's claims against the City on the sole basis that the Complaint "fails to include any allegations regarding a municipal policy or custom." Defs.' Mem. in Supp. of Mot. to Dismiss 5. The Court disagrees.

A municipality "may not be held liable under [§] 1983 under the respondeat superior doctrine." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality

---

[7] Defendants also seek dismissal of any non-constitutional state law claims against the City and Giorla on immunity ground. Because the Court construes the Complaint to assert only state constitutional claims, the Court need not address this issue.

5

can be liable under § 1983 only "when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). A policy "is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (alteration in original) (citation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law." *Id.* (internal quotation marks and citation omitted). To plead a § 1983 claim against a municipality, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

As to his claim regarding his allegedly unlawful transfer from federal to state custody, Parsons alleges the City has a custom or policy of "seizing prisoner[]s like the plaintiff in this case, on bogus last minute writs that are never filed with the Court of Common [P]leas or authorized by the issuing authority to allow seizure[]s of prisoner[]s for transfer[]s to Philadelphia County for Court appearances." Compl. ¶ 6; *see also id.* ¶ 29 ("[I]t is common practice and custom for Philadelphia Sheriff[]s to pick up prisoner[]s on last minute request from the DA's Office by using 'bogus writs' meant to be filed after the fact of seizure."). As to his claim regarding the conditions of his confinement at CFCF, the Complaint includes allegations from which it can plausibly be inferred that other inmates were subjected to the same triple-celling practice as Parsons. Compl. ¶ 2 (alleging Parsons was "warehoused in an overcrowded county jail" where he was "forced to sleep under a toilet on the floor of the cell"), ¶ 30 (referring to cells in which "other prisoner[]s lay under the benches"), ¶ 34 (referring to "overcrowded

unconstitutional hazardous conditions" at CFCF).  Construing these allegations liberally in Parsons's favor, the Court finds Parsons has sufficiently alleged the existence of a policy or custom to survive the motion to dismiss stage.  *See Cain v. Nutter*, No. 15-5524, 2016 WL 7031891, at *3 (E.D. Pa. Dec. 1, 2016) (holding allegations of "pervasive overcrowding" in the Philadelphia Prison System and extended period of restricted movement and lockdowns affecting the prison population as a whole "suggest[] that all inmates suffered the same circumstances—a fact that could establish a practice or custom"); *cf. Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (noting the plaintiff's failure to "allege that other inmates suffered similar deprivations . . . that might establish a custom").

As for Parsons's claims against Giorla, Defendants move to dismiss these claims on the basis that the Complaint fails to allege Giorla had personal involvement in any of the alleged wrongs.  The Court agrees.

To be liable under § 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  A plaintiff may satisfy the personal involvement requirement by alleging that the defendant "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [a] subordinate's unconstitutional conduct."[8]  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (citation omitted), *rev'd on other grounds sub nom. Taylor v.*

---

[8] The personal involvement requirement may also be satisfied by allegations that the defendant, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes v. Firs Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Taylor v. Barkes*, 135 S. Ct. 2042 (2015).  The Complaint pleads no facts to support such a claim.

*Barkes*, 135 S. Ct. 2042 (2015); *see also Rode*, 845 F.2d at 1207. *Id.* Here, the Complaint connects Giorla to the alleged constitutional violations only through allegations that Parsons "filed several grievance forms directed to . . . Giorla," requesting to be transferred back to FCI-Allenwood and alerting him to the conditions under which Parsons was confined. Compl. ¶ 37; *see also id.* ¶ 10(a) (alleging Giorla is sued for "knowingly and intentionally holding prisoner[]s on bogus unauthorized writ[]s who were freed on the charges after posting cash bonds, yet kept in his . . . custody and control after the error was grieved by plaintiff by way of . . . administrative remedy at C.F.C.F."). However, "a prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right." *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011). Although the Complaint does not include sufficient allegations of Giorla's personal involvement in the wrongs alleged, in response to Defendants' motion to dismiss, Parsons maintains that in addition to filing grievances, he spoke directly to Giorla and explained he "was being held in violation of the Law and his Rights." Pl.'s Opp'n to Defs.' Mot. to Dismiss 2. Thus, while Parsons's claims against Giorla in his individual capacity will be dismissed, the Court will grant Parsons leave to amend these claims.[9]

---

[9] Insofar as Parsons brings claims against Giorla in his official capacity, such claims are duplicative of his claims against this City and will therefore be dismissed. *See McDonald-Witherspoon v. City of Phila.*, No. 17-1914, 2018 WL 4030702, at *5 (E.D. Pa. Aug. 23, 2018) (dismissing official capacity claim against a Philadelphia prison warden in his official capacity as duplicative a claim against the City); *cf. Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55)).

Lastly, Parsons alleges violations of his rights under the Pennsylvania Constitution.[10] Compl. ¶¶ 49-50. Defendants argue to dismiss these claims on the ground that monetary damages are not authorized for violations of the Pennsylvania Constitution. The Court agrees.

"To date, neither Pennsylvania statutory authority nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." *Bowers v. City of Phila.*, No. 06-3229, 2008 WL 5210256, at *8 (E.D. Pa. Dec. 12, 2008) (quoting *Dillon v. Homeowner's Select,* 957 A.2d 772, 780 n.11 (Pa. Super. Ct. 2008)); *see also Balletta v. Spandoni*, 47 A.3d 183, 192-94 (Pa. Commw. Ct. 2012) (dismissing claim for damages brought under state constitution). Here, Parsons seeks only monetary relief. Therefore, Parsons has failed to state a claim for violations of the Pennsylvania Constitution.

For the above stated reasons, Defendants' motion to dismiss will be granted in part and denied in part. The motion will be granted as to Plaintiff's claims against Giorla in his official capacity and his state constitutional claims against both Giorla and the City, which will be dismissed with prejudice. The motion will also be granted as to Plaintiff's federal claims against Giorla in his individual capacity, which will be dismissed without prejudice and with leave to amend. The motion will be denied as to Plaintiff's federal claims against the City.

An appropriate order follows.

---

[10] Parsons alleges violations of "his rights under the Pennsylvania Constitution and the laws of the Commonwealth of Pennsylvania to be free of deprivations of liberty without due process of law, and to be free from cruel and unusual punishment." Compl. ¶ 50. Because the state law rights Parsons alleges were violated are rights afforded by the Pennsylvania Constitution, *see* Pa. Const. Art. 1, the Court construes the Complaint as alleging only state constitutional claims. Notably, in his opposition to Defendants' motion to dismiss, in which Defendants also seek dismissal of potential non-constitutional state law claims on immunity grounds, Parsons does not suggest he is asserting any non-constitutional state law claims.